UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CEDRIC COLLINS | CIVIL ACTION NO. 15-cv-2495 |
| VERSUS | JUDGE FOOTE |
| MEDICATED DEPT., ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Cedric Collins ("Plaintiff") is a self-represented convicted prisoner who is housed at the David Wade Correctional Center ("DWCC"). Plaintiff filed this civil rights action against several prison officials based on alleged deliberate indifference to his serious medical need. Plaintiff primarily complains about delay in obtaining treatment for what was diagnosed as a stroke. Defendants have filed a Motion for Summary Judgment (Doc. 36). For the reasons that follow, it is recommended that the motion be granted.

**Relevant Facts**

Defendants support their motion with several affidavits and medical records. Plaintiff filed a memorandum in response, but he did not submit any competing summary judgment evidence. The facts, for purposes of analysis of the motion, will be taken from the unchallenged facts in Plaintiff's complaint and the uncontested summary judgment evidence presented by Defendants.

Plaintiff alleges that he woke up on February 7, 2015 with "numbness on the left side of my face and arm with pain." Plaintiff alleges that he was unable to speak clearly or ask for help, but defendant Orlando Jones was making rounds and saw Plaintiff sitting on his bed crying. Jones asked what was wrong. Plaintiff alleges that he could not answer, but he shook his head yes when his cellmate asked if he wished to make a medical emergency. The cellmate then helped him complete an emergency sick call form.

Orlando Jones offers similar testimony in his affidavit. He testifies that Plaintiff appeared to be in discomfort, so Jones asked if Plaintiff needed to put in for an emergency sick call, and Plaintiff indicated yes. Jones submitted the completed form to the key room, where an officer on duty notified medical staff and a captain. A nurse and captain arrived within four minutes to evaluate Plaintiff, and it was determined that he needed to be taken to the infirmary. Other officers escorted Plaintiff to the infirmary, and Jones had nothing else to do with Plaintiff's medical treatment.

Nurse Joel Williams testified that he is a registered nurse employed at DWCC, and he examined Plaintiff in his cell and in the infirmary on February 7, 2015. Plaintiff complained of numbness to the left side of his face and stated that he had a history of Bell's palsy, a type of facial paralysis that results in an inability to control facial muscles on an affected side. Williams noted that Plaintiff walked without difficulty, his pupils were equal and responsive to light, there were no neurological deficits, and no weakness to his upper or lower extremities. Williams testifies that he determined the symptoms were not life threatening, but he put in a request for Plaintiff to see a doctor. Williams explains that this

was his only involvement in Plaintiff's medical care, and he did not schedule physician appointments for the inmates.

Ten days later, on February 17, 2015, Plaintiff wrote a letter to Paula Millwee, a registered nurse at DWCC. Plaintiff stated that he had made a sick call for numbness in the facial area and been advised by Nurse Williams that he would be put on the doctor's call-out for the next week, but he had yet to see a doctor "and my condition has gotten worse." Plaintiff stated that he could not swallow food properly and had problems breathing. He asked to be put on the call-out before things got any worse. Millwee responded two days later, on February 19, "You are scheduled to see the doctor soon." Millwee testifies that she had no other involvement in Plaintiff's medical care. Plaintiff had been scheduled to see Dr. Fuller on February 23, but the doctor rescheduled it to February 27.

Dr. Jeffrey Fuller testifies that he is employed as a physician at DWCC. He evaluated Plaintiff on Thursday, February 27, 2015 for numbness of the face, which was the only symptom then noted in the medical records. Plaintiff also presented that day a new set of complaints: slurred speech, difficulty swallowing, weakness of his right arm and leg, and difficulty with balance. Dr. Fuller testifies that there had been no previous notation in the records of any of those symptoms, nor had there been additional sick calls or requests for treatment that reported continuing or worsening symptoms between February 7 and February 27. Fuller's testimony implies that he was unaware of the letter Plaintiff sent to Nurse Millwee; he does not mention it in his affidavit.

Dr. Fuller testifies that he ordered that Plaintiff be transported to the University Health Hospital in Shreveport on Monday, March 3, which was the next routine transport date for offenders from DWCC. Dr. Fuller testifies that the symptoms he observed on February 27 were reported to have been present for three weeks and "did not appear to be emergent or life threatening." He states that if they had been, he would have arranged for immediate transport of Plaintiff to an appropriate medical facility. He adds that the nursing personnel at DWCC did not have the authority to authorize transport of Plaintiff to a medical facility outside of the prison.

Medical notes from University Medical show that Plaintiff presented on March 2, 2015 with left side droop of his face that had lasted for three weeks but with no new symptoms. In fact, the notes record that "the problem has been gradually improving." Physical examination noted the facial droop and left side of the tongue with atrophy, but no other problems.

Three days later, on March 5, 2015, a neurologist noted that Plaintiff had been admitted for evaluation of subacute stroke. Plaintiff was described as a 41-year-old male with a history of smoking, cocaine abuse, and Bell's palsy. The diagnosis was subacute stroke that would not benefit from endovascular intervention. The recommended treatment was continuing aspirin and Plavix and a mechanical soft diet. Plaintiff stated that he wanted to go back to his assigned housing at DWCC, and his discharge instructions included assignment to a bottom bunk.

**Assessment of the Motion**

**A. Eight Amendment Claim**

For a convicted prisoner to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**B. Summary Judgment Burdens**

This matter comes before the court on a motion for summary judgment. Granting such a motion is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon

the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**C. Analysis**

Defendants presented specific facts through their affidavit testimony and medical records. The defendants challenge the claims directly on the merits and raise a qualified immunity defense. "The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." Wallace v. County of Comal, 400 F.3d 284, 289 (5th Cir.2005). Each defendant's entitlement to qualified immunity must be examined separately. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007).

Orlando Jones responded immediately to Plaintiff's complaint by submitting an emergency sick call, which resulted in a nurse reporting to the cell within minutes. Nurse Joel Williams promptly had Plaintiff taken to the infirmary, examined him, determined that the symptoms were not life threatening, and put in a request for Plaintiff to see a doctor. Paula Millwee received a letter from Plaintiff that reported his symptoms were worse and that he wished to be put on the doctor call-out list. Millwee responded within two days that Plaintiff was scheduled to see the doctor soon, and he was. Dr. Fuller examined Plaintiff, determined that he was not in an emergency or life threatening situation, and ordered that he be taken to the hospital on the next scheduled transport. None of those actions suggest that any of those individuals acted with deliberate indifference to a serious medical need.

A prison official acts with deliberate indifference only if he knows that an inmate faces a substantial risk of serious bodily harm and disregards that risk by failing to take reasonable measures to abate it. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). A showing of deliberate indifference requires the prisoner to submit evidence that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Id. Mere medical malpractice does not constitute deliberate indifference. Id.

Each of the named defendants took action in response to Plaintiff's complaints and symptoms. It turned out that Plaintiff's medical condition involved a stroke, which was more serious than the suspected effects of Bell's palsy, but a misdiagnosis does not equal deliberate indifference. Domino v. Texas Dept. of Corrections, 239 F.3d 752, 756 (5th Cir. 2016) ("It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference."). And good faith medical care that is off the mark or unsuccessful does not suggest deliberate indifference. Zaunbrecher v. Gaudin, 641 Fed. Appx. 340 (5th Cir. 2016) (reversing denial of qualified immunity for nurse and supervisor who rendered frequent treatment in response to an inmate's complaints but overlooked fatal case of acute peritonitis).

Plaintiff's main complaint is about the delay between his initial symptoms on February 7 and being admitted to the hospital on March 3. There was some delay between the initial complaint and examination by Dr. Fuller that is not fully explained by Defendants, but a delay in medical care will violate the Eighth Amendment only if the delay is based on

deliberate indifference and results in substantial harm. Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993). Plaintiff speculates that the delay could have led to multiple strokes or death, but there is no evidence that the delay was based on deliberate indifference or that it resulted in any additional harm to Plaintiff or prevented him from being treated appropriately when he arrived at the hospital. The treatment that was prescribed was conservative, and there is no indication that different treatment would have been available or ordered if Plaintiff has arrived at the hospital earlier.

Plaintiff is obviously dissatisfied with the promptness of his medical care, but there was nothing about his symptoms that made any defendant deliberately indifferent for not ordering emergency or more prompt treatment. There may have been room for improvement in the care that was afforded, but that is a far cry from deliberate indifference, which "is an extremely high standard to meet." Domino, 239 F.3d at 756. Each of the defendants took steps toward obtaining reasonably prompt and appropriate care for Plaintiff's symptoms. Each of them is entitled to summary judgment. Plaintiff recently reported (Doc. 39) that he will go free in eight weeks, so he will soon be relieved of dependence on the defendants for his care, and he can seek treatment whenever he wishes.

Accordingly,

**IT IS RECOMMENDED** that Defendants' **Motion for Summary Judgment (Doc. 36)** be **granted**, and that all claims against all Defendants be **dismissed with prejudice**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 11th day of April, 2017.

Mark L. Hornsby
U.S. Magistrate Judge